UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SELVIN ARGUETA CAAL and SELVIN ALDAIR ARGUETA NAJERA, | ) ) ) | |
| Plaintiffs, | ) ) | No. 23 C 598 |
| v. | ) ) | Judge Rowland |
| THE UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

**Table of Contents**

Table of Authorities ............................................................................................... iv

Introduction ............................................................................................................1

Background .............................................................................................................1

    I.      Statutory Framework for Noncitizens Entering the United States..........................1

    II.     Statutory Framework for Immigration Custody of Unaccompanied Minors...........2

    III.    Flores Agreements Requirements ...........................................................3

    IV.    Executive Branch Directives Regarding Immigration Enforcement .....................4

    V.     Plaintiffs' Detention and Placement ........................................................5

    VI.    Plaintiffs' Complaint ...........................................................................6

Legal Standards......................................................................................................6

Argument ...............................................................................................................7

    I.      No Waiver of Sovereign Immunity ........................................................8

        A.    Discretionary Function Exception ...................................................9

            1.    Explanation and History ........................................................9

            2.    Application to Plaintiffs' Separation .........................................12

                a.    Prosecution of Selvin Sr...........................................13

                b.    Separation of Selvin Jr. from Selvin Sr. ..........................16

            3.    Conditions of Confinement....................................................17

        B.    Exception for Actions Taken While Reasonably Executing the Law .............18

        C.    No Private-Person Analogue........................................................19

        D.    Independent Contractor Exception..................................................21

        E.    Other Exceptions ......................................................................22

II.    Failure to State a Claim ..........................................................................23

    A.    Privileged Conduct..........................................................................23

    B.    Pleading Deficiencies ....................................................................25

        1.    Intentional Infliction of Emotional Distress (Count 1) ............................25

        2.    Negligence (Count 2)....................................................27

        3.    Abuse of Process (Count 3) .........................................29

        4.    Assault (Count 4) .........................................................30

        5.    Tortious Interference with Familial Relationship or Harboring or Abducting a Minor Child (Count 5) ....................................31

Conclusion ....................................................................................................32

## Table of Authorities

Cases

*Accardi v. United States*, 435 F.2d 1239 (3d Cir. 1970)................................................. 18

*Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007) ................................................................. 26

*Air Shuttle Corp. v. United States*, 112 F.3d 532 (1st Cir. 1997) ................................. 20

*Antonelli v. Crow*, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012)................................. 17

*Peña Arita v. United States,* 470 F.Supp.3d 663 (W.D. Tex. 2020)....................... 15, 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................... 7, 30

*Baie v. Secretary of Def.*, 984 F.2d 1375 (9th Cir. 1986) ............................................ 16

*Bailor v. Salvation Army*, 51 F.3d 678 (7th Cir. 1995)................................................ 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................... 6, 7, 26, 30

*Berkovitz v. United States*, 486 U.S. 531 (1988) ....................................................... 13

*Bhuiyan v. United States*, 772 F.App'x 564 (9th Cir. 2019)........................................ 21

*Blackstock v. Tatum*, 396 S.W.2d 463 .................................................................... 29

*Blanco Ayala v. United States*, 982 F.3d 209 (4th Cir. 2020)..................................... 12

*Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985)........................................... 19

*Bossin v. Towber*, 894 S.W.2d 25 .......................................................................... 29

*Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993)............................................................ 27

*Brownback v. King*, 141 S. Ct. 740 (2021) ................................................................. 8

*Bultema v. United States*, 359 F.3d 379 (6th Cir. 2004)............................................. 17

*Bunikyte v. Chertoff*, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ........................ 4, 15

*Butz v. Economou*, 438 U.S. 478 (1978)................................................................... 11

*Caban v. United States*, 728 F.2d 68 (2d Cir. 1984)............................................. 24, 25

*Calderon v. United States*, 123 F.3d 947 (7th Cir. 1997) ................................. 8, 10, 11

*Capitol Leasing Co. v. FDIC*, 999 F.2d 188 (7th Cir. 1993) ........................................ 6

*Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508 (7th Cir. 1995) ........................ 10, 11

*Chen v. United States*, 854 F.2d 622 (2d Cir. 1988) ........................................ 20

*Clark v. Suarez Martinez*, 543 U.S. 371 (2005) ........................................ 14

*Clark v. United States*, 326 F.3d 911 (7th Cir. 2003) ........................................ 8

*Cohen v. United States*, 151 F.3d 1338 (11th Cir. 1998) ........................................ 15

*Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434 (9th Cir. 1986) ........................................ 14

*Couch v. United States*, 694 F.3d 852 (7th Cir. 2012) ........................................ 8

*D.B. v. Preston*, 119 F.Supp.3d 472 (E.D. Va. 2015) ........................................ 16

*Dalehite v. United States*, 346 U.S. 15 (1953) ........................................ 18

*Davila v. United States*, 713 F.3d 248 (5th Cir. 2013) ........................................ 24

*Davis Packing Co. v. United States*, 443 F.Supp. 589 (W.D. Tex. 1977) ........................................ 18

*Davis v. Carlson*, 837 F.2d 1318 (5th Cir. 1988) ........................................ 28

*Dillard Dep't Stores v. Silva*, 106 S.W.3d 789 ........................................ 26

*Dupree v. United States*, 247 F.2d 819 (3d Cir. 1957) ........................................ 18

*Elgamal v. Bernacke*, 714 F. App'x 741 (9th Cir. 2018) ........................................ 21

*Elgamal v. United States*, 2015 WL 13648070 (D. Ariz. July 8, 2015) ........................................ 21

*FDIC v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*, 592 F.2d 364 (7th Cir. 1979) ........................................ 19

*FDIC v. Meyer*, 510 U.S. 471 (1994) ........................................ 8

*Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279 (3d Cir. 1995) ........................................ 16

*Flores v. Barr*, 2020 U.S. Dist. LEXIS 97047, *23 (C.D. Cal. Apr. 24, 2020) ........................................ 21, 28, 30

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ..................................................... 3, 4, 15

*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) ............................................................ 3

*Franklin Sav. Corp. v. United States*, 180 F.3d 1124 (10th Cir. 1999) .......................... 17

*Gandarillas-Zambrana v. BIA*, 44 F.3d 1251 (4th Cir. 1995) ..................................... 14

*Garza v. United States*, 881 F.Supp. 1103 (S.D. Tex. 1995)................................... 24, 27

*Gaubert v. United States*, 499 U.S. 315 (1991) ................................................ 9, 10, 11

*General Dynamics Corp. v. United States*, 139 F.3d 1280 (9th Cir. 1998)................................ 13

*Giotis v. Apollo of Ozarks, Inc.*, 800 F.2d 660 (7th Cir. 1986)....................................... 6

*GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1999) ................................................... 25

*Halverson v. United States*, 972 F.2d 654 (5th Cir. 1992).......................................... 22

*Harrison v. Fed. Bureau of Prisons*, 464 F.Supp.2d 552 (E.D. Va. 2006)...................... 17

*Hernandez v. United States*, 2018 WL 4103015 (S.D. Tex. July 2, 2018)................................. 24

*Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223 (5th Cir. 1988) ................................. 23

*Hunt v. Baldwin*, 68 S.W.3d 117 (Tex. App.—Houston [14th Dist.] 2001, no pet.)................... 29

*Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155 (1st Cir. 1987)....................................... 19

*In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982 (9th Cir. 1987) ............................ 22

*In re FEMA Trailer Formaldehyde Product Liability Litigation*, 713 F.3d  (5th Cir. 2016) ....... 23

*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987)........................................................ 13

*Johnson v. Odom*, 949 S.W.2d 392........................................................................ 26

*Jones v. Hyman*, 107 S.W.3d 830 (Tex. App.—Dallas 2003, no pet.) .......................... 26

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................................. 6

*Kristensen v. United States*, 993 F.3d 363 (5th Cir. 2021) ........................................ 28

*Lehman v. Nakshian*, 453 U.S. 156 (1981) ................................................................ 8

*Linder v. United* States, 937 F.3d 1087 (7th Cir. 2019).................................................................. 11

*Lineberry v. United States*, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) .................................. 17

*Lipsey v. United States*, 879 F.3d 249 (7th Cir. 2018).................................................................. 15

*Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012) .................................................................. 20

*Maas v. United States*, 94 F.3d 291 (7th Cir. 1996) ...................................................................... 9

*Mazur v. United States*, 957 F.Supp. 1041 (N.D. Ill. 1997) ........................................................ 21

*McElroy v. United States*, 861 F.Supp. 585 (W.D. Tex. 1994) .................................................... 24

*Mejia-Mejia v. ICE*, 2019 WL 4707150 (D.D.C. Sept. 26, 2019) ................................................ 13

*Miller Harness Co. v. United States*, 241 F.2d 781 (2d Cir. 1957) ............................................ 23

*Mirmehdi v. United States*, 662 F.3d 1073 (9th Cir. 2011) ........................................................ 15

*Parrott v. United States*, 536 F.3d 629 (7th Cir. 2008) ................................................................ 8

*Payne-Barahona v. Gonzalez*, 474 F.3d 1 (1st Cir. 2007) .......................................................... 26

*Porter v. United States*, 473 F.2d 1329 (5th Cir. 1973)............................................................... 19

*Powell v. United States*, 233 F.2d 851 (10th Cir. 1956) .............................................................. 18

*Purell v. McCarthy*, 2017 WL 478301 (N.D. Ill. Feb. 6, 2017) .................................................... 5

*Quijano v. United States*, 325 F.3d 564 (5th Cir. 2003) .............................................................. 28

*Rathod v. Barr*, 2020 WL 1492790 (W.D. La. Mar. 5, 2020) ...................................................... 28

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ........................................ 14

*Reynolds v. United States*, 549 F.3d 1108 (7th Cir. 2008).............................................. 10, 11, 14

*Ryan v. ICE*, 974 F.3d 9 (1st Cir. 2020) ...................................................................................... 20

*S.E.B.M. v. United States*, 2023 WL 2383784 (D.N.M. Mar. 6, 2023) ..................... 13, 18, 19, 25

*Saldana v. United States*, 248 F.3d 1139 (5th Cir. 2001) ............................................................ 24

*Santana-Rosa v. United States*, 335 F.3d 39 (1st Cir. 2003) ...................................................... 15

*Sasso v. Milhollan*, 735 F.Supp. 1045 (S.D. Fla. 1990)................................................................ 14

*Sickman v. United States*, 184 F.2d 616 (7th Cir. 1950)............................................................. 19

*Smith v. Sneed*, 938 S.W.2d 181 (Tex. App.—Austin 1997, no pet.)........................................... 26

*Smith v. United States*, 375 F.2d 243 (5th Cir. 1967) ................................................................. 13

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)......................................................... 6

*Sw. Env't Ctr. v. Sessions*, 355 F.Supp.3d 1121 (D.N.M. 2018) ................................................. 13

*Sydnes v. United States*, 523 F.3d 1179 (10th Cir. 2008) ........................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)................................................. 7

*Theriot v. Durano*, 2012 U.S. Dist. LEXIS 77891, *4 (E.D. Mich. June 5, 2012)...................... 30

*Tovar v. United States*, 2000 WL 425170 (N.D. Tex. Apr. 18, 2000)................................... 24, 31

*Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239 (5th Cir. 1993) ........................................ 27

*United States v. Armstrong*, 517 U.S. 456 (1996) ....................................................................... 13

*United States v. Dominguez-Portillo*, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ............. 3, 4, 15

*United States v. Kwai Fun Wong,* 575 U.S. 402 (2015) ................................................................ 9

*United States v. Nixon*, 418 U.S. 683 (1974) .............................................................................. 13

*United States v. Olson*, 546 U.S. 43 (2005) ................................................................................. 20

*United States v. Orleans*, 425 U.S. 807 (1976)............................................................................ 21

*United States v. Varig Airlines*, 467 U.S. 797 (1984).................................................................. 10

*United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019) ............................................. 4

*Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999) ...................................................................... 14

*Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009) ........................................................ 24

*Walding v. United States*, 955 F.Supp.2d 759 (W.D. Tex. 2013).................................... 22, 28, 30

*Westbay Steel, Inc. v. United States*, 970 F.2d 648 (9th Cir. 1992)............................................. 20

iv

*Wong v. Beebe*, 2007 WL 1170621 (D. Or. Apr. 10, 2017) .......................................................... 23

*Wornick Co. v. Casas*, 856 S.W.2d 732 (Tex. 1993) .................................................................... 25

## Statutes

6 U.S.C. § 279 ............................................................................................................ 2, 16

8 U.S.C. § 1225 ........................................................................................................ 1, 2, 25

8 U.S.C. § 1231(g)(1) ................................................................................................. 2, 14

8 U.S.C. § 1232 ........................................................................................................ passim

8 U.S.C. § 1325(a) ................................................................................................ 1, 4, 5, 13

28 U.S.C. § 2401(b) .......................................................................................................... 9

28 U.S.C. § 1346(b) ......................................................................................... 8, 9, 20, 23

28 U.S.C. § 2671 ............................................................................................................. 21

28 U.S.C. § 2680 ................................................................................... 8, 9, 11, 18, 22

## Rules

Fed. R. Civ. P. 8(a)(2) ..................................................................................................... 30

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 6, 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 6, 7, 30

**Introduction**

Plaintiffs, a father and son from Guatemala, were separated from each other upon entering the United States in May 2018 due to the implementation of a policy to refer for prosecution anyone suspected of illegally entering at the U.S.-Mexico border, including parents traveling with children. They are now seeking damages under the Federal Tort Claims Act. The United States does not defend the policy choices that led to family separations in the previous administration. But Congress has not waived the United States' sovereign immunity for the types of claims that plaintiffs assert in this action, so the claims are barred. And even if there were a sovereign immunity waiver, plaintiffs have failed to state a claim upon which relief can be granted for any of the five torts they allege. Either way, the claims should be dismissed.

**Background**

## I. Statutory Framework for Noncitizens Entering the United States

Noncitizens who arrive in the United States, including those who arrive between ports of admission, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. §§ 1225(a)(1), (a)(3), (b) (using the statutory term "alien," although this brief will use the term "noncitizen"). When a noncitizen enters the United States between official ports of entry, he may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C. § 1325(a). Violation of § 1325(a) is a misdemeanor punishable by a fine and imprisonment of up to six months for a first infraction. *Id.*

A person arriving or present in the United States who is deemed inadmissible is also subject to removal from the United States and, as appropriate, detention pending the removal. 8 U.S.C.

§§ 1225(b), 1226, 1357. These provisions apply to both adults and children. The government has statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *Id.* § 1231(g)(1). In some cases, the Department of Homeland Security, or DHS, may exercise its discretion to release a noncitizen from custody pending a decision on removal. *E.g.*, *id.* §§ 1182(d)(5), 1226(a)(2).

## II. Statutory Framework for Immigration Custody of Unaccompanied Minors

Federal immigration law authorizes the government to provide for the custody and care of minor children who are present in the United States without lawful immigration status. Specifically, the Department of Health and Human Services' Office of Refugee Resettlement, or ORR, is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child," or UAC, is defined as a child who: (1) "has no lawful immigration status in the United States," (2) "has not attained 18 years of age," and (3) for whom "there is no parent or legal guardian in the United States" or "no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, or TVPRA, any agency "shall transfer" a child to ORR's custody "not later than 72 hours after determining that such child is an unaccompanied alien child," absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). But ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B). Rather, once ORR takes custody, it must follow detailed statutory and regulatory provisions before releasing the child to an approved

sponsor.  8 U.S.C. § 1232(c)(3).  Congress forbids transferring custody of a UAC "unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that this determination "shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child."  *Id*. § 1232(c)(3)(A).  In some instances, a home study is required.  *Id*. § 1232(c)(3)(B).

## III.    Flores Agreement Requirements

In 1996, the government entered into a settlement agreement referred to as the "Flores Agreement."  *See, e.g.*, *Flores v. Sessions*, No. 85 C 4544 (C.D. Cal. Feb. 2, 2015) (Dkt. 101).  The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors" in immigration authorities' custody.  *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores Agreement ¶ 9).  According to the Ninth Circuit, the Flores Agreement "unambiguously" applies to both unaccompanied minors and minors who are encountered with their parents or guardians.  *Id*. at 901.  Under the agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility.  *Id*. at 902-03 (quoting Flores Agreement ¶ 12).  The government must also "make and record the prompt and continuous efforts on its part" toward releasing the minor.  *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting Flores Agreement ¶ 14).

The Flores Agreement applies only to minors.  *Flores*, 828 F.3d at 901.  It does not address "the housing of family units and the scope of parental rights for adults apprehended with their children," and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'"  *Id*. at 906; *see also United States v. Dominguez-Portillo*,

3

2018 WL 315759, *9 (W.D. Tex. Jan. 5, 2018) (*Flores* "does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities"), *aff'd sub nom. United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019). Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759 at *14-15; *Bunikyte v. Chertoff*, 2007 WL 1074070, *16 (W.D. Tex. Apr. 9, 2007). Though the Flores Agreement gives preference to releasing a minor to his parent, the preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

## IV. Executive Branch Directives Regarding Immigration Enforcement

On April 6, 2018, Attorney General Jefferson Sessions issued a memorandum that directed "each United States Attorney's Office along the Southwest Border—to the extent practicable, and in consultation with DHS—to adopt immediately a zero tolerance policy for all offenses referred for prosecution under" 8 U.S.C. § 1325(a), which prohibits unlawful entry into the United States ("the Zero-Tolerance Policy"). On May 4, 2018, Homeland Security Secretary Kirstjen Nielsen approved a policy of referring for prosecution, to the extent practicable, all adults who unlawfully crossed the Southwest border of the United States, including those initially arriving with minors ("the DHS Referral Policy").

Consistent with these directives, DHS began to refer for prosecution increased numbers of adults—including those traveling with children—who unlawfully entered the United States on the southwest border in violation of § 1325. Children designated as UACs were transferred to ORR custody, as the TVPRA required. *See* 8 U.S.C. § 1232(b)(3).

4

## V. Plaintiffs' Detention and Placement

According to the complaint, plaintiffs—referred to in the complaint, and accordingly here, as Selvin Sr. and Selvin Jr.—traveled from Guatemala to the United States, arriving at the border "near" Reynosa, Mexico, on May 18, 2018. Compl. ¶¶ 19-20. After crossing the border, they were apprehended by U.S. Customs and Border Protection. *Id.* ¶ 21. They were then separated, having not realized that they were entering the United States "just one week after then-Secretary Kirstjen Nielsen had directed all DHS law enforcement officers at the border to refer all illegal border crossers to the Department of Justice for criminal prosecution." *Id.* ¶¶ 23, 27.

Consistent with the Executive Branch enforcement directives described above, Selvin Sr. was charged with knowingly and unlawfully entering the United States at a place other than those designated by immigration officers, in violation of 8 U.S.C. § 1325(a)(1). Ex. A (criminal complaint charging Selvin Sr. with entering illegally by rafting across the Rio Grande River); Ex. B (order finding probable cause to believe offense was committed); *see also Purell v. McCarthy*, 2017 WL 478301, *1 (N.D. Ill. Feb. 6, 2017) (at pleadings stage, court may take judicial notice of matters of public record). He pleaded guilty on May 21, 2018, and was sentenced to time served and a special assessment of ten dollars. Ex. C (judgment against Selvin Sr.). After pleading guilty, Selvin Sr. was transferred to a privately owned and operated detention center and was ultimately deported. Compl. ¶¶ 58, 70-77.

Because Selvin Sr. was no longer able to provide care and physical custody of Selvin Jr., Selvin Jr. was designated as a UAC and transferred to ORR. Compl. ¶¶ 39, 45-48; 8 U.S.C. § 1232(b)(3). He was placed at BCFS Health and Human Services in Baytown, Texas, until his uncle in Atlanta, Georgia, was identified and approved as a sponsor about six months later. Compl. ¶ 29, 45-48.

## VI.    Plaintiffs' Complaint

Plaintiffs filed this lawsuit in February 2023.  Compl. ¶ 1.  They allege that the government had the goal of inflicting pain and suffering and that their separation from May 2018 until January 2020 traumatized them, "inalterably harming their physical and emotional wellbeing."  *Id*. ¶ 13. They bring five counts: (1) intentional infliction of emotional distress; (2) negligence; (3) abuse of process; (4) assault (as to Selvin Jr. only); and (5) tortious interference with familial relations, or harboring or abducting a minor child (as to Selvin Sr. only).  Compl. ¶¶ 89-112.

### Legal Standards

Rule 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The court must consider the threshold issue of jurisdiction before addressing a case's merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). A plaintiff bears the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it.  *Giotis v. Apollo of Ozarks, Inc.*, 800 F.2d 660, 672 (7th Cir. 1986); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The court may look beyond the complaint's allegations to determine whether subject matter jurisdiction exists.  *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).

Rule 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim.  To survive dismissal, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The factual allegations "must be enough to raise a right to relief above the speculative level" and must be sufficient to "state a claim to relief that is plausible on its face."  *Id*. at 555, 570.  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court ruling on a motion to dismiss may rely on documents incorporated into the complaint by reference and on matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## Argument

The current administration has disavowed the previous administration's referral policy. However, Congress has not waived the United States' sovereign immunity with respect to claims arising from it. Plaintiffs' complaint challenges discretionary decisions that are susceptible to policy analysis, including policies surrounding law enforcement, immigration, and national security, and it also challenges actions taken by federal employees exercising due care in the execution of federal immigration statutes and regulations. Statutory exceptions to the Federal Tort Claims Act's general waiver of the United States' sovereign immunity preclude these types of claims, so the case should be dismissed in the first instance on subject matter jurisdiction, sovereign immunity, or failure-to-state-a-claim grounds.

And even if the court did have subject matter jurisdiction and there were a waiver of sovereign immunity, plaintiffs have failed to state a claim upon which relief can be granted as to the particular claims they have pleaded. First, plaintiffs' claims challenge conduct that is considered privileged under the Texas law that is applicable in this FTCA case. And second, plaintiffs fail to state a claim under Texas law for intentional infliction of emotional distress (Count 1), negligence (Count 2), abuse of process (Count 3), assault (Count 4), or tortious interference with familial relationship or harboring or abducting a minor (Count 5). Accordingly, even if the court were to exercise jurisdiction, the claims should be dismissed under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

## I.     No Waiver of Sovereign Immunity

The United States, as a sovereign entity, "is immune from suit except insofar as it has specifically and expressly consented to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quotation omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the government. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (holding that "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional"). The plaintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity. *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003) ("To maintain an action against the United States in federal court, a plaintiff must identify a statute that confers subject matter jurisdiction on the district court and a federal law that waives the sovereign immunity of the United States to the cause of action.").

The FTCA contains a "limited waiver of the United States' sovereign immunity." *Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012). The statute allows a person to sue the United States when a federal employee acting within the scope of their employment causes "injury, loss of property, or personal injury or death." 28 U.S.C. § 1346(b)(1). However, the FTCA's waiver of sovereign immunity is subject to several exceptions. 28 U.S.C. § 2680. When an exception applies, the United States retains sovereign immunity, and the claim must be dismissed. *Calderon v. United States*, 123 F.3d 947, 948 (7th Cir. 1997) (affirming dismissal of action pursuant to Rule 12(b)(1)).[1] As discussed below, several exceptions to the FTCA's general waiver of sovereign

---

[1] The Seventh Circuit (alone among the circuits) has since held that FTCA defenses are not jurisdictional, but mandatory claims-processing rules, *e.g., Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008) (noting that the FTCA statutory exceptions "limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction from the federal courts"). But more recent Supreme Court decisions strongly suggest the opposite. *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (holding that "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional");

immunity apply here, any of which precludes plaintiffs' claims (whether the exceptions are considered jurisdictional or as mandatory claims-processing requirements).

### A.  Discretionary Function Exception

#### 1.  Explanation and History

One of the FTCA's exceptions is the "discretionary function exception," or the DFE. It bars any claim that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused*." 28 U.S.C. § 2680(a) (emphasis added). The Supreme Court has provided a two-part test for determining whether the DFE applies. *Gaubert v. United States*, 499 U.S. 315, 328-32 (1991).

In the first part of the two-part DFE test, the court asks whether the challenged conduct was "discretionary in nature," in other words whether the conduct involved "an element of judgment or choice." *Gaubert*, 499 U.S. at 322 (quotation omitted). The first prong is met unless "a federal statute, regulation or policy *specifically proscribes* a course of action for an employee to follow." *Id*. (emphasis added); *see also Maas v. United States*, 94 F.3d 291, 297 (7th Cir. 1996) (the statute, regulation, or policy does not call for the exercise of judgment only if it provides a

_____

*United States v. Kwai Fun Wong,* 575 U.S. 402, 411-12 (2015). The jurisdiction-granting statute for the FTCA is 28 U.S.C. § 1346(b), which begins "[s]ubject to the provisions of chapter 171 of this title [§§ 2671-2680], the district courts . . . shall have exclusive jurisdiction" of tort claims against the United States. In *Wong*, the Supreme Court held that the statute of limitations for FTCA cases, 28 U.S.C. § 2401(b), which is in a *different* chapter of Title 28 (chapter 161), does not fall on the jurisdictional side of the "structural divide" created by 28 U.S.C. § 1346(b), referring to those sections that are located in chapter 171 of Title 28 contrasted with those sections that are located in a different chapter of Title 28. The exceptions to the FTCA found in § 2680 are on the jurisdictional side of the "structural divide" created by the opening clause of § 1346(b). A rule is jurisdictional "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006), which is exactly what Congress did in the opening and qualifying clause of § 1346(b). But this court need not resolve the tension between jurisdictional limitations and mandatory claim-processing rules; either way, the claims in this case are subject to dismissal on sovereign immunity grounds.

"precise and optionless directive"). Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied. *Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 513 (7th Cir. 1995) ("In this inquiry, the existence of regulatory requirements, however detailed, is of no import if the means of determining compliance . . . involves the type of judgment protected by the discretionary function exception"); *Calderon*, 123 F.3d at 950 (whether a particular response under the regulatory scheme is mandatory turns on discretionary judgments as to whether certain conditions are met).

In the second part of the two-part DFE test, if the conduct does involve choice or discretion, the court determines whether the employees' judgment was "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. The DFE is designed to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through tort action." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984) (quotation omitted); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) ("All that matters is the nature of the actions taken and . . . whether they are susceptible to policy analysis."); *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008) ("[W]e operate at a higher level of generality . . . , asking categorically (rather than case specifically) whether the kind of conduct at issue can be based on policy concerns.").

The government need not prove that anyone in fact considered these factors or made a conscious decision on the basis of them. Indeed, under the second prong, the government actors' subjective motive is immaterial: "The focus of the inquiry is *not* on the agent's subjective intent in exercising the discretion conferred by statute or regulation." *Gaubert*, 499 U.S. at 325; *Reynolds*, 549 F.3d at 1112 ("The government actor's interest is of no consequence to our analysis, [n]or must the actor belong to the policymaking or planning ranks of government in order for the

exception to apply.") (quotations and citations omitted).  Where the relevant policies provide for discretion, it must be presumed that the government's actions are grounded in policy when exercising that discretion.  *Gaubert*, 499 U.S. at 324.

And the FTCA's text confirms that the exception applies "whether or not the discretion involved [was] abused" by an official.  28 U.S.C. § 2680(a), *see also Reynolds*, 549 F.3d at 1112 (DFE applies where plaintiff alleges "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis"); *Linder v. United* States, 937 F.3d 1087, 1090 (7th Cir. 2019).  The exception "tells us that there is no liability even if a regulation or directive is invalid, and even if the discretion conferred under it has been abused."  *Id*.  Put simply, "when some legal doctrine creates discretion, the fact that the discretion was misused and a tort ensued does not lead to liability."  *Id*. at 1091; *see also Butz v. Economou*, 438 U.S. 478, 505 (1978) (observing that the FTCA "prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused").

If the DFE applies, then the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed.  *Calderon*, 123 F.3d at 948.  This result applies even if the government may have been *negligent* in performing the discretionary acts, because negligence is irrelevant to the discretionary function inquiry.  28 U.S.C. § 2680(a) (DFE applies "whether or not the discretion involved be abused"); *Cassens*, 44 F.3d at 515 ("If the discretionary function exception could be pierced by showing negligent acts in implementing the discretionary function, the exception would be no shield at all."); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (FTCA's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion").

11

### 2. Application to Plaintiffs' Separation

Here, plaintiffs' claims are based on the decisions to prosecute Selvin Sr. and to detain him pending immigration proceedings, resulting in the separation of Selvin Sr. and Selvin Jr. Compl. ¶¶ 17, 29, 58, 70. The claims are barred by the discretionary function exception, because the challenged decisions involved an element of judgment or choice and were susceptible to policy analysis. Plaintiffs do not allege that border agents unlawfully apprehended them. They do not allege that the government lacked discretion to refer Selvin Sr. for prosecution or to prosecute him. They do not allege that the government lacked discretion to hold him in secure detention pending immigration proceedings. And they do not allege that the government lacked discretion to conclude that Selvin Jr. was a UAC within the meaning of the TVPRA.

These decisions, which resulted in Selvin Sr. and Selvin Jr.'s separation, are quintessentially discretionary. The discretionary function exception plainly applies to decisions relating to the apprehension of noncitizens for unlawful entry and referral for criminal prosecution. Indeed, discretion "lies at the heart of the DHS law enforcement function." *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020). In exercising this function, DHS agents must "make all the classic judgment calls the discretionary function was meant to exempt from tort liability." *Id*. Immigration policy involves "vital national interests in law enforcement at the borders," and DHS officers' "decisions in investigating and responding to potential violations of immigration law are infused with public policy considerations." *Id*. at 217. Accordingly, the decision to apprehend a person and to refer him for criminal prosecution is a discretionary decision that cannot be challenged.

### a.       Prosecution of Selvin Sr.

Regarding prosecutions, the Supreme Court has recognized that the Attorney General and United States Attorneys "retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation omitted). Indeed, the Supreme Court "has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *see also Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("decisions concerning enforcement" are matter of "discretion"); *General Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) ("The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability" under the FTCA).

As other courts have recognized, the policy that was in place when Selvin Sr. was prosecuted "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, 2019 WL 4707150, *5 (D.D.C. Sept. 26, 2019); *Sw. Env't Ctr. v. Sessions*, 355 F.Supp.3d 1121, 1126 (D.N.M. 2018) ("Whether a person is prosecuted for [8 U.S.C. § 1325(a)] after a referral by DHS is a decision made by DOJ, and is subject to DOJ's prosecutorial discretion."); *S.E.B.M. v. United States*, 2023 WL 2383784, 2023 U.S. Dist. LEXIS 37232, *37 (D.N.M. Mar. 6, 2023) ("The decision to prosecute is perhaps the prototypical discretionary function the exception is intended to protect from liability."). The discretionary function exception bars the court from "second-guessing" or inquiring into government actors' intent in exercising that prosecutorial discretion. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). In determining whether the DFE applies, the court looks only at whether the conduct or decision at issue is "susceptible" to policy analysis from an objective perspective,

without looking at subjective intent. *Reynolds*, 549 F.3d at 1112. Here, the government's decisions were not merely "susceptible" to policy analysis; they were explicitly grounded in policy—the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives. And concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999).

The government's decisions surrounding where to detain Selvin Sr. for immigration proceedings were also discretionary and susceptible to policy analysis. The government has the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1); *see also Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986) ("Congress has placed the responsibility of determining where aliens are detained within the discretion of the Attorney General [now DHS Secretary].."); *Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS [now DHS] necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F.Supp. 1045, 1046 (S.D. Fla. 1990) (finding that the Attorney General [now DHS Secretary] has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's [now DHS Secretary's] discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute); *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005) (explaining that, following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security).

Because the government has statutorily granted discretion to decide whether to detain a noncitizen pending resolution of immigration proceedings, and because the decision implicates policy issues, the decision falls within the FTCA's discretionary function exception. *Mirmehdi v. United States*, 662 F.3d 1073, 1081-82 (9th Cir. 2011); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions on whether to detain or release are policy-based decisions protected by DFE); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions on whether to detain or release are policy-based decisions protected by DFE); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception to the FTCA").

This discretion necessarily encompasses decisions regarding with whom a noncitizen will be detained, including whether an adult and a minor can be detained in the same facility and whether to detain family members together. *Peña Arita v. United States,* 470 F.Supp.3d 663, 691-92 (W.D. Tex. 2020) (decisions by DHS to separate family members are protected by DFE). Although the Flores Agreement contains some requirements regarding the detention of minors, it does not specifically prescribe any one course of action and therefore does not remove the government's discretion. The Flores Agreement does not require the release of a parent or mandate that a parent be housed with a child, and indeed it does not apply to parents at all. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759 at *14-15; *Bunikyte*, 2007 WL 1074070 at *16.

Here, plaintiffs can cite no statute, regulation, or policy that prescribed in 2018 a specific course of action that the government was required to take in connection with Selvin Sr.'s prosecution and immigration detention. Instead, the challenged decisions were the result of the

exercise of discretion. Accordingly, the exercise of the government's statutory authority regarding whether and where to detain Selvin Sr. for immigration proceedings is protected by the discretionary function exception.

### b. Separation of Selvin Jr. from Selvin Sr.

For similar reasons, the discretionary function exception also covers the determination that Selvin Jr. was an "unaccompanied alien child" within the meaning of the TVPRA. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Preston*, 119 F.Supp.3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see also Baie v. Secretary of Def.*, 984 F.2d 1375, 1377 (9th Cir. 1986) ("interpretation of the statute is a plainly discretionary administrative act the 'nature and quantity' of which Congress intended to shield from liability under the FTCA"). The DFE accordingly protects the government's determination, after Selvin Sr. was detained and referred for prosecution, that Selvin Jr. should be deemed unaccompanied and accordingly transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision is protected by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data").

In the end, this case is about government actions that were subject to discretion and susceptible to policy analysis. Plaintiffs cannot plausibly suggest that the government was *required* to release them into the interior, that the government did not have discretion to prosecute Selvin Sr., or that the government did not have discretion to determine that Selvin Jr. was a UAC.

16

The adoption of the Zero-Tolerance Policy and DHS Referral Policy are quintessential discretionary policy judgments subject to the discretionary function exception. *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1134 (10th Cir. 1999) ("FTCA claims are not vehicles to second-guess policymaking. That principle requires a federal court to dismiss an FTCA claim if jurisdiction is so dependent on allegations about government officials' intent or decisionmaking process that resolving the claim would require judicial inquiry into those subjective matters.").

### 3. Conditions of Confinement

The discretionary function exception also bars plaintiffs' remaining allegations concerning the conditions of their confinement, including the temperature and crowded conditions in the holding center and the pair's inability to communicate after being separated. Courts have repeatedly held that claims based on acts or omissions relating to conditions of confinement are barred by the DFE because they involve discretionary decisions susceptible to policy considerations. For example, in *Peña Arita*, the court rejected the contention that transfer decisions including where and how to house detainees or provide medical care were "nondiscretionary," finding that government decision-making regarding conditions of confinement was "susceptible to policy analysis" and that the court "must generally defer to the expertise of prison officials and is not to substitute its judgment for the consideration of such officials." 470 F.Supp.3d at 691; *see also Antonelli v. Crow*, 2012 WL 4215024, *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, were barred by DFE); *Lineberry v. United States*, 2009 WL 763052, *6 (N.D. Tex. Mar. 23, 2009) (DFE bars "allegation of negligent overcrowding"); *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Harrison v. Fed. Bureau of Prisons*, 464 F.Supp.2d 552, 559 (E.D. Va. 2006) (BOP's provision of telephone

17

services is "a matter committed to its discretion that will not be second-guessed through an FTCA claim"); *S.E.B.M. v. United States*, 2023 WL 2383784, *16 (D.N.M. Mar. 6, 2023) ("The *Flores* Agreement provides no time parameters for how long or frequent calls between children and their family members should be.").

## B.      Exception for Actions Taken While Reasonably Executing the Law

Plaintiffs' claim regarding the decision to transfer Selvin Jr. to ORR custody is also independently precluded because the FTCA prevents the United States from being held liable for a claim "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid."  28 U.S.C. § 2680(a).  In other words, if government employees "act pursuant to and in furtherance of regulations," any resulting harm "is not compensable" under the FTCA.  *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules and regulations'" barred by § 2680(a)).

The exception "bars tests by tort action of the legality of statutes and regulations."  *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was neither "desirable nor intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective").  The upshot is that when a government employee's actions are authorized by statute or regulation—even if that statute or regulation is later found unconstitutional or invalid—the claim must be dismissed.  *Bob Davis Packing Co. v. United States*, 443 F.Supp. 589, 593 (W.D. Tex. 1977), *aff'd* 584, F.2d 116 (5th

Cir. 1978); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950); *FDIC v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979); *Borquez v. United States*, 773 F.2d 1050, 1052-53 (9th Cir. 1985); *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1160-61 & n.5 (1st Cir. 1987) (exception barred claim that FBI destroyed owner's prototype by dismantling it during criminal investigation); *Porter v. United States*, 473 F.2d 1329, 1337 (5th Cir. 1973) (exception barred property damage claim of Lee Harvey Oswald's widow, who alleged that, in carrying out their appointed functions, FBI personnel had stained or discolored documents and personal effects by using chemical treatment during investigation into Kennedy assassination).

Here, the United States is required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In Selvin Jr.'s case, the government determined that Selvin Sr. was unable to provide care and physical custody for Selvin Jr., on account of its discretionary decision to detain Selvin Sr. and refer him for prosecution. Compl. ¶¶ 17, 58, 70, 78; *see S.E.B.M. v. United States*, 2023 WL 2383784, 2023 U.S. Dist. LEXIS 37232, *38 (D.N.M. Mar. 6, 2023) ("The act of charging, prosecuting, and jailing S.E.B.M's father made S.E.B.M. a UAC which in turn required her to be cared for elsewhere."). The TVPRA required that Selvin Jr. be transferred to ORR custody, and the enforcement of that statutory command—resulting in Selvin Jr.'s separation from Selvin Sr.—cannot form the basis of an FTCA claim.

### C. No Private-Person Analogue

Plaintiffs' claims must also be dismissed because the challenged government actions have no private-person analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in

accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." *Id*. § 2674. The FTCA does not waive sovereign immunity for claims against the United States based on governmental action "of the type that private persons could not engage in and hence could not be liable under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (quotation omitted).

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 46 (2005) (quotation omitted); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012). Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor would be subject to liability under state law if a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention, there is no private person analogue that could support a claim under the FTCA. The alleged harms here stem from the government's decision to enforce federal immigration laws and to hold a parent in custody pending prosecution and immigration proceedings, resulting in his child's placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law, and the decisions have no private-person counterpart. *E.g.*, *Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action); *Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling

immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("because no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well"); *Elgamal v. United States*, 2015 WL 13648070, *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772 F.App'x 564, 565 (9th Cir. 2019) ("there is, as a general matter, no private analogue to governmental withdrawal of immigration benefits"); *Mazur v. United States*, 957 F.Supp. 1041, 1042-43 (N.D. Ill. 1997) (regarding naturalization of noncitizens, "only the United States has the power to act" and "there is no private analog under state law").

**D.      Independent Contractor Exception**

The allegations regarding the medical care provided or not provided to Selvin Jr. are barred by the FTCA's independent contractor exception.  The FTCA "was never intended . . . to reach employees or agents of all federally funded programs that confer benefits on people." *United States v. Orleans*, 425 U.S. 807, 813 (1976).  It waives sovereign immunity only for tortious conduct of an "employee of the Government," and it expressly "excludes 'any contractor with the United States.'"  *Id.* (quoting 28 U.S.C. § 2671).  The FTCA thus preserves sovereign immunity for torts committed by government contractors or their employees.  *Id.*

Here, Selvin Jr. alleges that he requested medical care only at the facility in Baytown, Texas, where he arrived four days after he first encountered immigration officers.  Compl. ¶¶ 39, 45, 49, 57.  The court can take judicial notice that, in Baytown, Selvin Jr. was in the custody of a private contractor.  8 U.S.C. § 1232(b)(3) (immigration officials must transfer child to ORR custody within 72 hours); *Flores v. Barr*, No. CV 85-4544, 2020 U.S. Dist. LEXIS 97047, *23

21

(C.D. Cal. Apr. 24, 2020) (referring to "ORR care provider BCFS Baytown"). The complaint does not allege that the Baytown staff were employees of the United States, and, indeed, ORR contractors that provide shelter for UACs are not employees of the United States within the meaning of the FTCA. *Walding v. United States*, 955 F.Supp.2d 759, 791-811 (W.D. Tex. 2013) (independent contractor exception barred claim that United States negligently failed to ensure health and safety of minors detained at minor detention facility).

The complaint also does not allege that ORR negligently selected or negligently supervised the Baytown facility—and for good reason. As the *Walding* court noted, the discretionary function exception bars such claims, because the selection of a contractor to provide custody and care of UACs is left to ORR's discretion. 955 F.Supp.2d at 771-72 ("the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations"). ORR also has discretion over how to supervise its grantees, which involves "policy decisions concerning how to allocate its resources to oversee the facilities and personnel." *Id.* at 783; *see also In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 995 (9th Cir. 1987) (holding that DFE barred claim that government negligently supervised contractor's compliance with safety procedures and guidelines).

### E. Other Exceptions

Two other exceptions that preclude FTCA liability bear mentioning. First, any claim regarding the alleged destruction of Selvin Sr.'s personal belongings (Compl. ¶ 66) is barred by 28 U.S.C § 2680(c), which prohibits "claims arising out of the detention of goods." *Parrot v. United States*, 536 F.3d 629, 635-36 (7th Cir. 2008); *Halverson v. United States*, 972 F.2d 654, 656 (5th Cir. 1992). And second, any allegation that officials misled Selvin Sr. into signing a document that he did not understand (Compl. ¶¶ 65) is barred by 28 U.S.C. § 2680(h), which bars

any claim "arising out of" misrepresentation or deceit. *Miller Harness Co. v. United States*, 241 F.2d 781, 783 (2d Cir. 1957); *In re FEMA Trailer Formaldehyde Product Liability Litigation*, 713 F.3d 801 (5th Cir. 2016) (misrepresentation exception barred claim that FEMA failed to disclose that trailers it used for emergency housing emitted formaldehyde); *Wong v. Beebe*, 2007 WL 1170621, *25-27 (D. Or. Apr. 10, 2017) (misrepresentation exception barred noncitizen's claim that INS sent her a deceitful letter to induce her to appear at an INS office), *rev'd on other grounds*, 381 F. App'x 715 (9th Cir. 2010).

## II.     Failure to State a Claim

Even if the court were to exercise jurisdiction over one or more of plaintiffs' claims, the claims should still be dismissed for failure to state a claim upon which relief may be granted.  First, plaintiffs' claims challenge conduct that is considered privileged under Texas law.  And second, plaintiffs have failed to state a claim under Texas law for intentional infliction of emotional distress (Count 1), negligence (Count 2), abuse of process (Count 3), assault (Count 4), and tortious interference with familial relationship or harboring or abducting a minor (Count 5).

### A.     Privileged Conduct

The conduct that plaintiffs challenge here—the separation of Selvin Sr. and Selvin Jr. as a result of Selvin Sr.'s detention, prosecution, and immigration proceedings—was privileged under Texas law and federal immigration statutes.  (Texas law applies here because the FTCA makes the United States liable for the "negligent or wrongful act of omission" of federal employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with *the law of the place where the act or omission occurred*." 28 U.S.C. § 1346(b) (emphasis added).)  Actions that may otherwise subject a person to liability are not tortious if the conduct is privileged.  *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231 (5th Cir. 1988).  And

the United States is entitled to invoke state law privileges in FTCA cases. *Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009) (Texas's civil privilege defense statute applied in FTCA action alleging assault by federal officer); *McElroy v. United States*, 861 F.Supp. 585 (W.D. Tex. 1994) ("the United States may invoke any defenses available to individual law enforcement officers under Texas law"); *Hernandez v. United States*, 2018 WL 4103015, *3-4 (S.D. Tex. July 2, 2018) ("the Government may look to state law privileges as a defense to FTCA claims"). Privileges that apply to public officials performing their official functions with legal authority apply equally in FTCA cases. *Tovar v. United States*, 2000 WL 425170, *6-7 (N.D. Tex. Apr. 18, 2000) (dismissing false imprisonment claim and finding that, because federal immigration statutes authorized the challenged conduct, the government's conduct was privileged), *aff'd* 244 F.3d 135 (5th Cir. 2000); *Davila v. United States*, 713 F.3d 248 (5th Cir. 2013) (finding no FTCA liability because Texas's "civil privilege defense" protects officers who use force when they reasonably believe force is necessary, and finding no liability for false imprisonment because Texas's definition of false imprisonment excludes conduct undertaken under authority of law and a federal statute permitted the actions in question); *Saldana v. United States*, 248 F.3d 1139 (5th Cir. 2001) (same); *Garza v. United States*, 881 F.Supp. 1103 (S.D. Tex. 1995) (alleged assault was privileged because the federal agents were enforcing federal immigration law).

Here, the government's actions were privileged because, as explained above, the government was authorized to place Selvin Jr. in ORR custody after deciding to detain and prosecute Selvin Sr. *Caban v. United States*, 728 F.2d 68 (2d Cir. 1984), provides an illustrative example. There, the government detained the plaintiff when he arrived at JFK airport from the Dominican Republic because he was not able to show satisfactorily that he was an American citizen. The government ultimately decided that he was an American citizen and released him

24

after a six-day detention. He sued under the FTCA for false imprisonment, but New York's statutory definition of false imprisonment provided that false imprisonment does not occur if the confinement was "otherwise privileged." *Caban*, 728 F.2d at 72. The Second Circuit held that the government's conduct was "otherwise privileged" because a federal immigration statute provided that a person entering the United States who cannot clearly show his right to entry "shall be detained for further inquiry." *Id.* at 71 (quoting 8 U.S.C. § 1225(b) (1976)). The same result applies here, because the separation at issue was authorized by federal law. *Accord S.E.B.M. v. United States*, 2023 WL 2383784, 2023 U.S. Dist. LEXIS 37232, *19 (D.N.M. Mar. 6, 2023) (where government separated minor child from parent, the government's actions "were protected by its privilege to prosecute").

### B.    Pleading Deficiencies

As explained above, plaintiffs' claims are not cognizable under the FTCA or Texas law. But even if they were, plaintiffs have not pleaded facts that could support the essential elements of their claims that could give rise to a plausible right of recovery, and the claims should be dismissed for that reason as well.

### 1.    Intentional Infliction of Emotional Distress (Count 1)

Other deficiencies aside, plaintiffs have not stated a claim for intentional infliction of emotional distress. The essential elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme or outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the plaintiff's resulting emotional distress was severe. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999). In *Wornick*, the Texas Supreme Court described the outrageous conduct element as requiring conduct that "goes beyond all possible bounds of

decency as to be regarded as atrocious and utterly intolerable in a civilized society." 856 S.W.2d at 734. The court must determine as a matter of law whether the alleged conduct may reasonably be regarded as so extreme and outrageous that it permits recovery. *Id*.

Texas public policy strongly favors the prosecution of crime. *Smith v. Sneed*, 938 S.W.2d 181, 184 (Tex. App.—Austin 1997, no pet.) ("Texas courts have long recognized a strong public policy in favor of exposing crime.") (collecting cases). This policy is so strong that it "prohibits a person convicted of a crime from suing another for damages caused by conviction," including for claims of false imprisonment and intentional infliction of emotional distress. *Jones v. Hyman*, 107 S.W.3d 830, 831-32 (Tex. App.—Dallas 2003, no pet.). The principle is that allowing civil recovery in this context would impermissibly shift responsibility for the crime away from the convicted person. *Id*. (citing *Johnson v. Odom*, 949 S.W.2d 392, 393 (Tex. App.—Houston [14th Dist.] 1997, pet. denied)).

Here, plaintiffs' claim for intentional infliction of emotional distress is based largely on their separation. Compl. ¶¶ 89-93. But the allegations do not state a plausible claim for intentional infliction of emotional distress under Texas law. *See Twombly*, 550 U.S. at 555. The enforcement of federal immigration law is neither extreme nor outrageous under Texas law, even when it results in the separation of a parent from his child. *E.g.*, *Dillard Dep't Stores v. Silva*, 106 S.W.3d 789, 797 (Tex. App.—Texarkana 2003, pet. granted) (where probable cause exists for an arrest, the decision to initiate criminal proceedings "cannot constitute outrageous behavior"), *aff'd in part*, *mod. in part on other grounds*, 148 S.W.3d 370 (Tex. 2004). Indeed, the risk of interference with the parent-child relationship is inherent to immigration detention. *Aguilar v. ICE*, 510 F.3d 1, 22 (1st Cir. 2007) (every detention pending removal of a parent "runs the risk of interfering in some way with the parent's ability to care for his or her children"); *Payne-Barahona v. Gonzalez*, 474

F.3d 1, 3 (1st Cir. 2007) (holding that, if a child had a constitutional right to object to his parent's deportation, then it would be "difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods where the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service").

Where, as here, a parent is separated from his child due the institution of valid to immigration proceedings, that separation is neither extreme nor outrageous under Texas law. Rather, it is a necessary consequence of those proceedings. It therefore cannot constitute an intentional infliction of emotional distress. And to the extent plaintiffs intend to claim that alleged threats and insults lodged by various guards (Compl. ¶¶ 28, 61, 63-64, 66) constituted an intentional infliction of emotional distress, the allegations still fail to state a claim, because liability "does not extend to mere insults, indignities, threats, annoyances, or petty oppressions." *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993). This claim should be dismissed for this reason in addition to the others.

### 2. Negligence (Count 2)

Plaintiffs' negligence claim should be dismissed for two additional reasons. First, Texas law does not recognize a cause of action for negligent infliction of emotional distress. By layering a negligence claim on top of their claim for intentional infliction of emotional distress, the plaintiffs attempt to plead a claim for negligent infliction of emotional distress. Compl. ¶¶ 94-99. Texas law does not recognize such a claim, regardless of how severe the emotional distress allegedly was. *Garza v. United States*, 881 F.Supp. 1103, 1008 (S.D. Tex. 1995) (plaintiffs' layering of negligence claim on top of other torts sounded "suspiciously like an impermissible claim for negligent infliction of emotional distress) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993)).

Second, even if the negligence claim were not dismissed for the reason above, the claim should still be dismissed on the ground that plaintiffs have not identified an applicable duty under Texas law. *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021) (plaintiff claiming negligence under Texas law must show "the existence of a legal duty"). Plaintiffs have not identified any duty under Texas law to keep them together. And indeed, no such duty existed. *See Rathod v. Barr*, 2020 WL 1492790, *5 (W.D. La. Mar. 5, 2020) (in habeas matter, noting that a noncitizen "does not have a right to be housed in any particular facility, nor does this court have the authority to order ICE to house [a noncitizen] in any particular facility"); *Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988) (denying mandamus and holding that government has "no clear duty—nor, indeed, any duty" to transfer plaintiff to facility near his wife).

To the extent that the plaintiffs intend to allege *medical* negligence with respect to Selvin Jr.'s medical treatment, they have not adequately stated that claim, either. In Texas, medical negligence requires the showing of (1) a duty by a physician or hospital to act according to an applicable standard of care; (2) a breach of that duty; (3) an injury; and (4) a causal connection between the breach and the injury. *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). Here, the basis of any medical negligence claim appears to be the Baytown staff's alleged refusal to take Selvin Jr. to the hospital when he complained of abdominal and testicular pain. Compl. ¶¶ 50-57. But as explained above, the Baytown facility is an independent private contractor. 8 U.S.C. § 1232(b)(3) (immigration officials must transfer child to ORR custody within 72 hours); *Flores v. Barr*, No. CV 85-4544, 2020 U.S. Dist. LEXIS 97047, *23 (C.D. Cal. Apr. 24, 2020) (referring to "ORR care provider BCFS Baytown"). Any medical negligence claim arising out of care provided or not provided in Baytown would be barred by the independent contractor exception. *Walding v. United States*, 955 F.Supp.2d 759, 811 (W.D. Tex. 2013) (independent contractor

28

exception barred claim that United States negligently failed to ensure health and safety of minors detained at minor detention facility).

### 3. Abuse of Process (Count 3)

Plaintiffs also fail to plead facts supporting the essential elements of their claim for abuse of process (Count 3). Abuse of process is the malicious use or misapplication of process to accomplish an ulterior purpose. *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The elements are: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage resulted to the plaintiff as a result of the illegal act. *Id.*; *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The tort assumes that the original issuance of a legal process was justified, but that the process itself was subsequently used for a purpose for which it was not intended. *Hunt*, 68 S.W.3d at 130. The improper purpose "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. App.—Houston (1st Dist.), no writ history). When the process is used for the purpose for which it is intended, no abuse of process has occurred. *Hunt*, 68 S.W.3d at 130.

Here, plaintiffs have not pleaded facts showing that any federal employee "made an illegal, improper, or perverted use of [] process, a use neither warranted nor authorized by the process." *Hunt*, 68 S.W.3d at 129. Instead, they allege the use of the process exactly as it was authorized: to pursue criminal and removal proceedings against a noncitizen who entered the United States without inspection. The allegations in the complaint do not state a claim for abuse of process.

### 4. Assault (Count 4)

Selvin Jr. alleges that guards assaulted him by kicking him during his initial detention, before he was transferred to the private facility in Baytown. Compl. ¶¶ 6, 30, 32, 43, 45. The allegation is too vague to support a claim under the familiar *Twombly* and *Iqbal* standard. *Twombly*, 550 U.S. at 555 (complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 556 U.S. at 679 (2009) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'") (alteration in original, quoting Fed. R. Civ. P. 8(a)(2)). General allegations of assault without greater specificity do not sufficiently state a claim and are subject to dismissal under Rule 12(b)(6). *See, e.g., Theriot v. Durano*, 2012 WL 2013039, 2012 U.S. Dist. LEXIS 77891, *4 (E.D. Mich. June 5, 2012) (finding that plaintiff failed to state a claim under *Twombly* and *Iqbal* where plaintiff had "not identified where the alleged assault occurred nor described the incident in any detail").

And to the extent Selvin Jr. intends to allege that he was also kicked *after* being transferred to the private facility in Baytown (Compl. ¶ 30 ("During the six-month detention . . ."), as explained above that claim is barred by the FTCA's contractor exception. *Walding v. United States*, 955 F.Supp.2d 759, 811 (W.D. Tex. 2013) (independent contractor exception barred claim that United States negligently failed to ensure health and safety of minors detained at minor detention facility); 8 U.S.C. § 1232(b)(3) (immigration officials must transfer child to ORR custody within 72 hours); *Flores v. Barr*, No. CV 85-4544, 2020 U.S. Dist. LEXIS 97047, *23 (C.D. Cal. Apr. 24, 2020) (referring to "ORR care provider BCFS Baytown").

### 5. Tortious Interference with Familial Relationship or Harboring or Abducting a Minor Child (Count 5)

Finally, the court should dismiss plaintiffs' claim for "tortious interference with familial relationship / harboring or abducting a minor child" (Count 5). The complaint cites the Second Restatement of Torts (*not* Texas law) for the proposition that there exists a common law tort for interfering with a familial relationship or harboring or abducting a minor if a person "with the knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody." Compl. ¶ 110. But government officials do not commit the tort of interfering with a family relationship when they remove a child from the child's parent's custody pursuant to statutory authorization. Recognizing such a tort would have sweeping consequences that would broadly impair the government's ability to enforce the law and protect the public—including children. Under plaintiffs' logic, a parent would have a tort claim against the government any time a child is arrested and taken into custody against the parent's consent, or when a child is removed from a parent's home for protective reasons, or when a court grants custody to one parent over another in a family law proceeding, or—most relevant to this case— when a noncitizen parent cannot provide physical custody to his child because the parent has been arrested and detained. As explained above, once the government decided to detain and prosecute Selvin Sr., he was no longer able to provide care and physical custody of Selvin Jr., and so Selvin Jr. was designated as a UAC and transferred to ORR. Compl. ¶¶ 39, 45-48; 8 U.S.C. § 1232(b)(3). The conduct was accordingly privileged, *Tovar*, 2000 WL 425170 at *6-7, and the court should dismiss this claim as well.

**Conclusion**

For the above reasons, the case should be dismissed under Rule 12(b)(1) or 12(b)(6).

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov

# Exhibit A

AO91 (Rev. 12/03)  Criminal Complaint                                                    AUSA

# UNITED  STATES  DISTRICT  COURT

Southern District Of Texas McAllen Division

**UNITED STATES OF AMERICA**                           **CRIMINAL COMPLAINT**
**vs.**

Case Number: 7:18-po-04091

Selvin ARGUETA-Caal
IAE
Guatemala 1981

I, the undersigned complainant state that the following is true and correct to the best of my

knowledge and belief.  On or about _____**May 18, 2018**_____  in _____**Hidalgo**_____  County, in

the _____**Southern District Of Texas**_____  defendant(s) did,

**Being then and there an alien, did, knowingly and unlawfully enter the United States at a place other than as designated by immigration officers;**

in violation of Title _____**8**_____  United States Code, Section(s) _____**1325(a)(1)**_____

I further state that I am a(n) _____Border Patrol Agent_____  and that this complaint is based on the

following facts:

**Selvin ARGUETA-Caal was encountered by Border Patrol Agents near Mission, Texas on May 19, 2018.  When questioned as to his citizenship, defendant stated that he was a citizen and national of Guatemala, who had entered the United States illegally on May 18, 2018 by rafting across the Rio Grande River near the Hidalgo, Texas Port of Entry.**

**I DECLARE UNDER PENALTY OF PERJURY THAT THE STATEMENTS IN THIS COMPLAINT ARE TRUE AND CORRECT.**

Continued on the attached sheet and made a part of this complaint:     ☐ Yes     ☒ No

/S/  Bogle, Lozano  Border Patrol Agent
Signature of Complainant

Bogle, Lozano     Border Patrol Agent
Printed Name of Complainant

Sworn to before me and signed in my presence,

May 20, 2018                                          at     McAllen, Texas
Date                                                              City/State

Juan F Alanis            Magistrate Judge
Name of Judge            Title of Judge                        Signature of Judge

# Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *versus* | § | Criminal Case 7:18–po–04091 |
| | § | |
| Selvin Argueta–Caal | § | |

## ORDER

This Order memorializes the Court's prior findings, after reviewing the criminal complaint in the above styled and numbered cause, that there is probable cause to believe that the offense stated in the complaint was committed, and that the Defendant committed said offense.

SIGNED on May 21, 2018, at McAllen, Texas.

_____
Juan F. Alanis
United States Magistrate Judge

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

UNITED STATES OF AMERICA

v.                                        Case No.: 7:18–po–04091
                                          Magistrate Judge Juan F. Alanis

Selvin Argueta–Caal

---

## JUDGMENT

On **5/21/2018**, the defendant appeared in person and with counsel.

Whereupon the defendant entered a plea of guilty to the offense of knowingly and unlawfully entering the United States at a place other than as designated by immigration officers, in violation of Title 8, United States Code, Section 1325(a)(1), as charged in the Complaint; and the Court having found that the defendant is mentally competent, that the defendant's plea is voluntary and that there is a factual basis for the plea;

IT IS ADJUDGED that the defendant is guilty as charged and convicted.

IT IS ADJUDGED that a term of imprisonment of **time served and a special assessment of $10.00 are hereby imposed.**

DONE at McAllen, Texas, on **5/22/2018**.


_____
Juan F. Alanis
United States Magistrate Judge